CARTER v. McGEHEE. See Cases Nos. 11,-721–11,725.

CARTER (MENDENHALL v.). See Case No. 9,426.

## Case No. 2,478.

### CARTER v. MESSINGER.

[11 Blatchf. 34.] [1]

Circuit Court, N. D. New York. March 18, 1873.

PATENTS—"SLIDES FOR EXTENSION TABLES"—CONSTRUCTION—PATENTABILITY—VALIDITY.

1. The claims of the reissued letters patent granted to Merrill E. Carter and Elisha Metz, April 4th, 1871, for "improved slides for extension tables," the original patent having been granted to them September 6th, 1864, namely, "1. A metallic connecting slide, D, with flanges to be inserted in the grooves, E, E, of the wooden bars, A, B, C, when constructed, arranged, and operating in the manner and for the purpose specified," and "2. A metallic connecting slide, D, for the bars of extension tables, having the flanges on one side cast thicker than upon the other, so as to hold fast in the groove of one bar, and slide free in the groove of the other, as herein described," and "3. The pin h. and notches or holes, g, when combined with, and used to hold, a metallic connecting slide, D, in its proper position in the groove, E, of the bars of an extension table, as herein specified," so far as the slide is concerned, embrace only a slide which combines in one a double T slide and a double-wedged or dove-tailed slide, and do not embrace a slide which is simply a double T slide, or a slide which is simply a double-wedged or dove-tailed slide.

2. As to the second claim, making the flange on one side thicker than on the other was not new, and was not a matter of invention, and it was not invention to so construct a metallic slide when a wooden slide had been so constructed before.

3. A wooden double T slide being old, and a wooden double-wedged or dove-tailed slide being old, it was no patentable invention to make either form of slide of metal instead of wood.

4. Fastening one piece of wood to another, or one piece of metal to another, or a piece of metal to one of wood, by the use of nails, bolts, or screws, being old it was not a patentable invention to fasten a metallic slide in the groove of the slide bar, by passing a nail or bolt through both.

[In equity. Bill by Merrill E. Carter against Austin E. Messinger for alleged infringement of letters patent.]

N. B. Smith, for plaintiff.

E. Charlton Sprague, for defendant.

WOODRUFF, Circuit Judge. The bill of complaint alleges an infringement of a patent [No. 44,073] granted, September 6th, 1864, to the complainant and Elisha Metz, for "improved slides for extension tables," reissued April 4th, 1871 [No. 4,317]. The answer, among other things, (which, under the conclusions I have reached, it will not be necessary to discuss,) denies any infringement of the rights secured by the patent, alleges that the patentees were not the first

and original inventors of the device patented, denies the novelty of the invention, and avers that the reissue of the patent is invalid, because it seeks to enlarge the scope of the alleged original invention, as shown in the original patent, and embraces what was not embraced in such original patent, or the record thereof. To the correct understanding of the subject, in reference to each branch of these defences, it will be useful to refer to the original patent. This will be useful, not merely for the purpose of enquiring whether the reissue is valid, but it may furnish, as matter of evidence, some aid to the questions—what is, in truth, the invention claimed in the reissue itself, and whether the defendant is an infringer.

In their original specification, the patentees, at the outset, declare, that their invention "consists in the peculiar form and construction of the slides that connect or hold together the extension bars, and the manner of securing them in place in the groove." The grooved bars being then described, the specification proceeds: "These slides are of suitable length for the purpose designed, and constitute, in outline, a double T and double wedge or dove-tailed form." Then, describing the slide, its projections forming the double T, which fit in corresponding channels in the bars, and the dove-tail, or wedge, form, growing thinner to the centre, as shown in the drawings, it adds: "This double wedging form of the central portion of the slide forms a corresponding bevel with the sides of the groove" in the bars. The drawings make the form of the slide thus described quite plain, by exhibiting a cross section thereof as inserted in the grooves of two parallel bars. The patentees then state, that they "prefer to cast it of skeleton form, with the hollows or depressions, f, f, in the sides, but, if desirable, the double T at each side may be cast plain and solid." To secure the slides firmly, they make the tongues on one side of the slide a little thicker transversely than they are on the opposite side, so that they will drive closely into the end of the groove in which they are designed to remain stationary. Each slide is also formed with a vertical notch on one side, in which rests a pin passing through the bar. The advantage of this is stated to be the avoiding, and saving the expense, of the drilling of screw holes in the slide, as in the ordinary mode of securing them in place, and of the employment of screws. The specification enlarges on the advantages of what it calls "our combined double T and dove-tail slide," illustrating them by showing a simple double T form, and a simple double wedge or dove-tail form, in the drawings, showing the tendency of the simple double T, by the flanges or tongues, to tear or split out the lips or sides of the groove, and the same tendency added to a tendency to bind in the groove, when the simple double dove-tail is used. These difficulties are stated to be overcome

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

by the patentees, because, while the tongues prevent the wedges or dove-tail from binding, the wedging shape of the dove-tail prevents the lips of the groove from being torn off, by presenting a beveled surface as a bearing, thus strengthening the lips against lateral action, and forming a fulcrum on one side and a resistance on the other, best adapted to resist the strain that is brought to bear. The specification thereupon adds: "We do not claim either simply a double T form, or a double wedging, or dove-tailed form or slide, but, what we claim as our invention, and desire to secure by letters patent, is a slide, D, combining the double T and double wedge or dove-tailed form, the same consisting of the tongues, a, a, and centre, e, arranged in combination with the groove, E, and bars, A, B, C, substantially as herein set forth." "In combination with the slide, D, arranged as above described, provided with the notch, g, and with the groove, E, and bars, A, B, C, we also claim the pin, h. arranged and operating substantially as herein set forth."

Here is a clear and intelligible description of the invention of the patentees. and of what is shown in their drawings, and of just what they claimed; and no one can read it intelligently, without perceiving, that it consists, simply and only, of a slide combining in one the double T slide and the dovetailed slide, and then, further, the mode of fastening them in the grooved bars—first, by making one arm or side of the slide larger than the other, that it may be driven in and be held firmly by the sides of the groove; and, second, by a pin driven laterally through the bar, so as to press the slide in a notch formed on its inner edge. This construction of the specification and claim is rendered certain. not only by the disclaimer of the patentees, which, although not conclusive as an estoppel, is, nevertheless, useful, as evidence of their own consciousness of the fact, but, especially, by the proofs in this cause, that double T slides and double wedged or dovetailed slides were in common and public use theretofore.

I have not been able to discover any imperfection or mistake in this original patent calling for a reissue; nor, in truth, can I discover that. assuming the alleged invention to be patentable. the original patent did not secure to the patentees all that they could claim to have invented.

But, so far as the merits of this case are concerned, the reissued patent does not, in its specification, describe any other or different device as the invention of the patentees, unless, perhaps, the intimation that the slides referred to in the patent are made of some metal, is more distinct. In the original specification, there is no word of declaration that they are to be of metal of any kind. · Wood, as the material, will satisfy all the terms of the description, save that, in one line, it is said: "We prefer to cast it of skeleton form," &c. It would be difficult to say, that this declaration of preference precluded the patentees from claiming the slide they described, if patentable, whether made of wood or metal; still less, that they had thereby secured an exclusive right to the use of a metal slide, in contradistinction from a slide made of wood. In the reissued patent, it is said: "A hollow space, or depression; is left in each head, which not only reduces the metal, but leaves less friction," &c.; and this is the only word in the description of the invention in the reissued specification, which suggests that the patentees contemplated the use of metal for their slides. It is in the claims annexed to such reissue that this is made a restriction upon the otherwise broad scope of their description. But, in respect of the device invented, the specification in the reissued patent does not greatly differ from the original. In that, it is also stated, that the "invention consists in the form and construction of the slide, and the means for connecting the same with the extension bars." What, then, is that form and construction, which, in their view, constituted their invention, or, as very specifically afterwards stated, their "peculiar construction and form?" They state it thus: "The central or core portion is made double-wedging or dovetailed, the narrowest point being in the centre, which is the junction or joint between the two bars. The dove-tailed or thickened sides thus rest in the correspondingly-shaped grooves * * * made in the sides of the bars. The outer portions of the slide are formed into two extending or branching tongues * * * which are of T form, and fit in corresponding channels * * * of the groove. This construction makes the bearings * * * broad and separated, which is of much importance to give a firm hold and steadiness of action. A hollow space or depression is left in each head. which not only reduces the metal. but leaves less friction on the contact surfaces, and produces an improved form of the slide, at the same time forming a large bearing." In this last clause, the patentees seem to narrow their invention, by excluding the option which was reserved in the original, to make the head solid. as above explained. They then declare: "We claim a novelty, in the improved form of the slide as above described. A simple double T form of slide was in common use before our invention. Simple dove-tailed slides, without the T flanges, have also been in common use. These separate features we do not claim; but. in their combined form, we obviate many difficulties, such as binding in the groove and the splitting out of the tongues of wood. The broad bearing produced by the separated flanges * * * insures a more perfect action than is attained by the ordinary T form." Each one of the claims which follow refers to the flange thus described, and, of course, excludes the ordi-

nary double T flange, of whatever material it may be made.

1. Language could hardly have been chosen which would have made it more plain, that, in respect to the form and construction of the slide, the patentees claimed, in the reissue, as in the original, a slide combining the double T and the dove-tail, and nothing else. The use of the dove-tail caused a bearing upon that, holding the bars together, and resisting strain tending to tear or split the groove, and, at the same time, spreading more widely the arms of the T, and so preserving their strength, as well as giving them a broader bearing, and, as they say, "a more perfect action." This not only excludes the double T slide, of whatever material composed, but that is, in terms, declared to be in common use, without any discrimination as to material; and that it had been in use, made of wood, for many years, is also, proved by the testimony. The slide so described, and declared to be new, and to be claimed by the patentees, the defendant has not used. He employs the double T slide, and that only.

Upon this branch of the case, it is clear, that the defendant has not infringed the complainant's patent, if it be conceded that that patent is valid. The patentees expressly confine themselves to a slide of a special form and construction, combining the dove-tail and the T, and sedulously disclaim, in both the original and the reissue, the use of either alone; so that, on the face of the patents, and waiving all question of the novelty of the invention, and of the validity of the original or the reissued patent, they have, on this score, no ground of complaint of the defendant, who uses the T form only. The claims annexed to the reissued specification are: "1. A metallic connecting slide, D, with flanges to be inserted in the grooves, E, E, of the wooden bars, A, B, C, when constructed, arranged and operating in the manner and for the purpose specified." This claim, in very terms, confines the patentee to the combined form, with so much definiteness described in the specification itself.

2. The complainant insists, that, in another respect, there is an infringement. The reissued patent, as well as the original, describe the slide of the patentees as having the tongues or flanges, a, a, a little thicker on one side than on the other, so that they will drive closely into the groove in which they are designed to remain stationary; and, further, as having a notch on the side which is driven into the groove, in which a pin rests, which passes through the bar, and, by its presence in such notch, prevents any longitudinal movement of the slide, after it has been driven into the groove and the pin is inserted. The two other claims are framed to cover these features, thus: "2. A metallic connecting slide, D, for the bars of extension tables, having the flanges on one side cast thicker than upon the other, so as to hold fast in the groove of one bar, and slide free in the groove of the other, as herein described." "3. The pin, h, and notches or holes, g, when combined with, and used to hold, a metallic connecting slide, D, in its proper position in the groove, E, of the bars of an extension table, as herein specified."

It is well settled, that, in order to learn the true meaning and construction of the claims in a patent, the whole specification may be consulted; and, where the claim itself incorporates in it, by reference, several features of the invention, this becomes essential. In this view, neither of these claims can be construed without including the specific form of the slide, D, as therein described; and that, as already shown, the defendant has not used.

But, if that be not the true construction of these claims, and they are to be taken to claim broadly any slide firmly driven into the groove on one side, other considerations are equally fatal to the complainant. As to the second claim, 1st, it is distinctly proved that making one side of the slide thicker or larger than the other, so as to be driven firmly into the groove on one side, was not new. 2d. It being palpable that the grooves in the bars are of the same size, it was equally palpable, that the side of any slide that was to be held fast in the groove of one bar must be larger than that side which was to move or slide freely in the groove of the other. This was not matter of invention. It rises hardly to the dignity of mechanical judgment. Common sense, or even obvious necessity, suggest it so plainly, that one must be greatly deficient not to see it. 3d. If it be said that it is not shown that this was ever before employed to hold metallic slides, but wooden slides only, it must suffice to say, that transferring a mode of constructing wooden slides, in this respect, to metallic slides, is not invention. It operates in precisely the same way in both. Indeed, although it were conceded that that form of construction was, of itself, not sufficient, when applied to a wooden slide, without glue, and is effectual when applied to a metallic slide supplemented by the pin, still, the operation is identical in kind, and, if there be any difference whatever, it is in the degree of effectiveness. If screws had been used to bind both parts of a wooden frame together, it would not be invention to put parts of an iron frame together with screws, when the mode of application was identical. On this ground, therefore, if the second claim is not to be construed as including the specific form of the plaintiff's slide, D, the complainant must fail.

As to the making of the notch and the insertion of the pin. In the original patent, the notch and the notch and pin only are described as the means of holding the slide against longitudinal motion; and, in that, and in the proofs taken herein, the advan-

tages of the notch are made prominent. in this, that, being further removed from the face of the grooves, there was more strength in the intermediate portion of the wood of the bar. In the reissue the patentees have attempted to enlarge their claim. They describe this part of the fastening as a "notch or hole." and. in the claim, they say "notches or holes." This is claimed, with much force, to render the claim void; and, if it do in fact claim what is not shown or suggested in the original. and is not a mere equivalent. then the claim of the defendant on this point is correct. But, there is another view of the subject. If the claim can be construed, (without including the complainant's special slide.) as a broad claim to holding any slide, or any metallic slide, in position by a pin or bolt run through it, then the claim cannot be sustained at all. For, be it observed, the defendant does not use the notch. He inserts his slide in the groove, and secures it there by bolting it in. the bolt or nail passing through the bar and the hole in the slide. This mode of securing one piece of wood to another, or one piece of iron to another. is so ancient, that its date can hardly be found. Bolting a tenon in a mortice, whether of wood, or metal, or of both, as well as hundreds of other every-day instances, of securing, by nails. or bolts. or pins, inserted in holes made for the purpose, preclude any claim that the defendant may not, if he please, secure his slide in that manner. As already shown, he is at liberty to use the double T slide, and, using that, he may fasten it in place by bolts. pins, nails. or screws, or any old well-known manner of effecting a like result. It follows, that the defendant is in no fault. and the complainant's bill cannot be sustained.

On the hearing, much was said upon an assumption that the complainant's slide was patented strictly as a metallic slide, instead of a wooden slide. The views above expressed seem to me to render it unnecessary to rest any conclusion upon either view of the patent in that respect. for, as it is confined. in respect to form, to the specific slide described. the defendant does not infringe it by his slides, whether of wood or metal. At the same time, if the complainant's patent be not confined to the specific form of combined slide which he describes, but can be construed broadly to include any metal double T or dove-tailed slide. I should be of opinion, that, as each of those. made of wood, were in common use, the substitution of metal was not patentable, even if it was better, for it required no new device or mode of application to make it available. Hotchkiss v. Greenwood. 11 How. [52 U. S.] 248.

Neither is it necessary for me to consider the argument, that the reissue is void because it embraces more than is shown in the original. No opinion is necessary on that point. since my conclusion is, that, conceding its validity as limited by the preceding discussion, the defendant does not infringe any ex-

clusive right which can be legally claimed under it. The bill of complaint must, therefore, be dismissed, with costs.